

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable W. H. Crunk
County Attorney
Delta County
Cooper, Texas

Dear Sir:

Opinion No. O-6553
Re: Jurisdiction of Military and
Civil Courts as to the holding
and prosecution of military
personnel accused of violat-
ing State laws.

From your letter requesting our opinion as to the
subject matter as stated above, we quote the following:

"A problem has arisen here as to the juris-
diction of State Courts, and the jurisdiction of
Military and Federal Courts as to the holding and
prosecution of military personnel in violation of
State or local laws.

"Soldiers from nearby Camp Maxie are hauling
liquor from Dallas, Texas, through Delta County
(a dry area) and upon their apprehension by local
county officers or Liquor Control Men, the Military
authorities demand that they be turned over to
them, liquor and all for prosecution. The Mil-
itary Authorities at Camp Maxie have notified me
that they claim exclusive jurisdiction, during
this period of war to the prosecution of the cases,
citing the provisions of Articles of War, 10 U.
S.C.A. Sec. 1471-1593, and Articles 74, 93, 10
U.S.C.A. 1546, 1565.

"It is noted that in the Texas case of Ex
Parte Sumner reported by our Court of Criminal
Appeals January 28, 1942, in Vol. 158 S. W. 2d
310, the court held that under the Articles of

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable W. H. Crunk, page 2

War, a member of the army charged with negligent homicide, except in time of war, is within the concurrent jurisdiction of the civil and military courts.

"Do the County Courts of this State have equal concurrent jurisdiction with the military courts and Federal Courts, in the prosecution and conviction of soldiers of the U. S. Army, caught and detained for trial in dry counties, that is, do the proper military authorities have the power under the law to demand of the State authorities, the person of a soldier under arrest on a liquor violation and also the custody and right of final disposal of the liquor seized from the soldier's possession, in a case where the soldier is apprehended by State officers, traversing dry territory in violation of the Texas Liquor Control Act?"

In Opinion No. O-5579, this department considered the general question of whether soldiers of the United States Army were amenable to prosecution in State courts for violation of State laws. The opinion held that for such offenses as are committed by soldiers in time of war, the State courts have a sort of concurrent jurisdiction, distinguished from the ordinary meaning of that term by the fact that "the military courts have a preference or a prior or paramount right to the jurisdiction over an offense committed by a person in military service." The opinion goes on to say "the Military Courts, if they desire, may assume jurisdiction even though contrary to the wishes of a state court." Supporting the statement of Ex parte King, (D.C., Kentucky, 1917) 246 F. 868, People v. Denman, 179 Cal. 497, 177 P. 461, and Funk v. State, 84 Tex. Cr. R. 402, 208 S. W. 509, are cited.

It is pointed out in said Opinion No. O-5579, however, that the military can waive the paramount or prior right to the jurisdiction of an accused by either releasing the custody of the offender to the civil authorities, or by taking no action whatsoever, the latter course constituting acquiescence or waiver to the civil courts assuming jurisdiction.

For this holding the cases cited are: Caldwell v. Parker,
(Ala., 1920) 252 U.S. 376, 40 S. Ct. 388, 64 L. Ed. 621;
Coleman v. Tenneser, (Tenn., 1878) 97 U.S. 509, 24 L. Ed.
1118; Ex parte Sumner, 143 Tex. Cr. R. 238, 158 S.W. 2d 310,
and Fund v. State, supra.

It has been repeatedly held that the accused may
not choose the tribunal by which he is to be tried. Ex parte
Eason, 105 U.S. 696, 26 L. Ed. 1213; Gaines v. State, 95 Tex.
Cr. R. 368, 251 S.W. 245; State v. Inman, 224 N.C. 531, 31
S.E. 2d 641; Ex parte Sumner, supra; People v. Denman, supra.

Whether the civil authorities may demand the person
of an offender for trial by civil courts from the possession
of the military in time of war, is not deemed subject to de-
bate. The military may properly ignore such demand. 10
U.S.C.A. § 1546; Caldwell v. Parker, supra; Ex parte Sumner,
supra; Ex parte King, supra, and many others.

But your situation poses the opposite proposition.
May the military authorities demand the surrender of a soldier
alleged to have violated a State law, while off his post and
not in the performance of any military function, who has been
apprehended by the civil authorities and is being held to an-
swer a proper charge in the civil courts? We find only a
limited number of authorities on this point, and these are
far from harmonious.

In Ex parte King, supra, a soldier charged in the
State court of Kentucky with the offense of murder (thekilling
took place on the streets of a city – off the military post,
and not done in the performance of any military duty), was
ordered to be delivered to military authorities by the Federal
District Court for the Eastern District of Kentucky. The case
was one of habeas corpus, instituted by the father of accused.
We think it must significant that the General of the Army
serving as the brigade commander of accused, filed an inter-
vening petition, seeking delivery of the prisoner to the mil-
itary authorities for trial by a court-martial for the murder.

The Federal District Judge held that the military
authorities had superior jurisdiction of the offense, and or-
dered the prisoner delivered over the military, even though
on the day of the killing the captain and major of the soldier

Honorable W. H. Crunk, page 4

delivered him to the custody of the civil authorities and on his examining court trial consented that such civil authorities should proceed with the case, such consent not being, as against the commanding officer of the brigade, a sufficient waiver of the preference right of the military authorities to try him; there being no presumption that the captain and major acted with authority.

The King case was never passed upon by an appellate court. It is cited in People v. Denman, supra, by the Supreme Court of California (177 P. 461, at p. 463) as authority for the "possible right of such (military) authorities to take such a person (an accused) from the custody of the civil authorities." (Emphasis and parenthetical insertions supplied) It is also cited in Briggs v. Commonwealth, 185 Ky. 340, 214 S.W. 975 at p. 979, but was held not applicable in that case, which involved other questions. The reference to the King case in Funk v. State, supra, (208 S.W. 509 at p. 510) can hardly be construed as approval of the holding.

In the case of Application of Beer, 180 Misc. 330, 41 N.Y.S. 2d 413 (decided in 1943, the only other case we find citing Ex parte King, supra) the New York County Supreme Court at a special term, upon application of the Chief of Staff, Second Service Command, U. S. Army, upon habeas corpus ordered the release of a technical sergeant being held by the civilian to the military authorities. The sergeant had been committed for examination by a city magistrate on a charge of felonious assault upon a civilian. The writ was sought by the Chief of Staff upon the grounds of necessity for military security and upon assertion that the prisoner would be held to answer for such "infractions of military or civil law as may be established against him."

Citing Ex parte King, the New York Court stated the general rule to be that "the civil courts, in time of peace, have priority in the exercise of jurisdiction, while the military tribunals, in time of war, may assert priority."

The latest expression of a Federal Court on the question of the military taking jurisdiction of a soldier already held by the civil authorities appears to be in the case of United States v. Matthews, (D.C., Ala., 1943) 49 F. Supp. 203.

Honorable W. H. Crunk, page 5

In the Matthews case, the commanding officers of one Graziul sued out a writ of habeas corpus seeking the custody of the soldier held by a county sheriff to await the action of a grand jury on a charge of rape. In the petition before the court, it was not set up that the soldier was acting in line of duty, that the custody was sought for the purpose of bringing him to trial before a military court, or that adequate justice would not be done in the State tribunal. Also, no facts were averred which if proven would show any material interference with or impairment of the military service of the State. The court concluded that the military authorities did not have prior jurisdiction over the defendant, observing that it was not a case of the State seeking to take away from the military authorities a soldier in their custody, but rather a case where the military authorities sought the custody of a soldier held by the State.

The court in the Matthews case discussed at length the meaning of Article 74 of the Articles of War as set out in § 1546 of 10 U.S.C.A., reading in part as follows:

"When any person subject to military law . . . is accused of a crime or offense committed within the geographical limits of the states of the Union . . . and punishable by the laws of the land, the commanding officer is required, except in time of war, upon application duly made, to use his utmost endeavor to deliver over such accused person to the civil authorities, or to aid the officers of justice in apprehending and securing him, in order that he may be brought to trial." (Emphasis ours)

The above section and its history, according to the Federal District Judge writing the opinion, show that it was designed only to modify what had theretofore been the absolute and unqualified duty of the military authorities to surrender over to the State authorities on demand, in time of peace and war, persons in the military service who were charged with certain offenses against the laws of the State; the underscored language "except in time of war," relieving the military authorities only of what had theretofore been their duty, upon application by the State, to use their utmost endeavor to

Honorable W. H. Crunk, page 6

deliver over such accused persons to the civil authorities.
See Annotation, 147 A.L.R. 1429, note.

The only cases we find wherein the Matthews case
has been cited are Snedeker v. United States, (D.C., Pennsyl-
vania) 54 F. Supp. 539, 540, and State v. Inman, 224 N.C. 531,
31 S.E. 2d 641, 646. The Snedeker case merely held that the
fact that a prisoner was a United States soldier when an of-
fense was committed did not deprive the civil courts of jur-
isdiction to try a criminal charge against him, so as to en-
title him to relief on habeas corpus from confinement under
a sentence imposed by a Federal District Court for kidnapping.
The North Carolina Supreme Court in the Inman case did not
pass upon the pressing issue now before us, holding that if
the plea of military jurisdiction should be allowed at all,
the procedure followed in that case did not comply with cer-
tain requirements of that State's practice.

In the leading United States Supreme Court case of
Caldwell v. Parker, supra, (October Term, 1919) the effect of
the holding was that offenses committed by soldiers are crimes
against both the State and the Army, and that the tribunals
of each possess concurrent jurisdiction to try and punish of-
fenders. However, the court specifically stated: "As there
was no demand by the military authorities for the surrender
of the accused, what would have been the effect of such a
demand, if made, is not before us." We have been unable to
find any specific expression upon the question involved in
your opinion request in any case decided by the Nation's final
arbiter. Nor have we found any case deciding the question by
any Texas appellate court.

Insofar as there appears to have been no adjudica-
tion by any court possessing final authority on the question,
and as inferior courts differ, we are impelled to advise you
that from all of the authorities we believe it the better
course to yield the custody of soldiers violating the laws
you mention to the military upon a demand by the proper of-
ficer of the Army, whenever the assertion is made that the
prisoner will be held to account for such infractions of mil-
itary or civil law as may be established against him.

By "proper officer" is meant that officer in the
chain of command of the Army set over the accused soldier and

Honorable W. H. Crunk, page 7

authorized to institute appropriate disciplinary action against him. And the demand should be seasonably made before trial by the civilian court.

Violations of the Texas Liquor Control Act (Articles 666-1 to 656-51 and 667-1 to 667-27, Vernon's Annotated Penal Code of Texas) constitute misdemeanors as prohibited by the laws of the State of Texas. As "there is no offense which, in time of war, is not cognizable under the Articles of War" (Tillotson, Articles of War, Annotated, 1942, at p. 159), the illegal transportation, possession for the purpose of sale, etc., of intoxicating liquors by soldiers not on military missions or on Federal Government property, would not only come within the jurisdiction of the county courts of Texas for prosecution as misdemeanor violations by the civil authorities, but would also legally come within the terms of the 96th Article of War (Sec. 1568, U.S.C.A., Title 10) reading as follows:

"Though not mentioned in these articles, all disorders and neglects to the prejudice of good order and military discipline, all conduct of a nature to bring discredit upon the military service, and all crimes or offenses not capital, of which persons subject to military law may be guilty, shall be taken cognizance of by a general or special or summary court-martial, according to the nature and degree of the offense, and punished at the discretion of such court."

We think it may be safely presumed that the Army authorities will respect and adequately enforce the written law, and, when the facts are brought to their attention involving any particular case of a soldier violating the law, that the miscreant will be properly and legally disciplined. By such course the majesty of the Texas law need not suffer in the slightest.

With reference to the disposition of the contraband liquors seized by civilian peace officers, it is our opinion that the terms and provisions of the Texas Liquor Control Act will prevail, even though the seizure be made from a soldier,

Honorable W. H. Crunk, page 8

who following his arrest is surrendered to the military authorities, and subjected to trial by a military court. See Sections 20 and 30 of the Texas Liquor Control Act (Arts. 666-20 and 666-30, Vernon's Annotated Penal Code, Texas). We find nothing inconsistent with such practice. If the erring soldier is proceeded against by the military authorities, and resists the case against him, the civilian officer or officers making the arrest and seizure would be almost necessary witnesses, and if necessary could display to the military court or authority the seized alcoholic beverage in question. Among other provisions of Section 20 of the Liquor Act, supra, is the direction that upon seizure by search warrant, "All such alcoholic beverages and articles shall be seized by the officer executing the warrant and shall not be taken from the custody of any officer by writ of replevin nor any other process, but shall be held by such officer to await final judgment in the proceedings."

Section 30 of the Act requires all contraband liquors seized by peace officers or agents of the Liquor Control Board (without or with warrant) "to be turned over to either the sheriff of the county in which such seizure is made or to any authorized representative or agent of the Board."

Our advise, therefore, is to surrender custody of the men in military service, upon proper showing and demand as outlined above, but to retain the illicit liquor and beverages seized, for disposition as provided by our statutes.

The foregoing is based upon the assumption that you are concerned with illegal transportation and possession of intoxicating liquors by individual soldiers, and the seizure of such contraband from them by state officers. Of course liquor being transported in a legal manner through your county would not be subject to seizure, and military personnel engaged in such a legal enterprise would not be subject to arrest or interference by civil authorities. Instances of this would be liquors consigned to the post exchange or other governmental agency at the army post you mention. See

Honorable W. H. Crunk, page 9

Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 64 S. Ct. 622, 88 L. Ed. 553, affirming C.C.A., 137 F. 274, affirming D.C., 48 F. Supp. 594.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall
Benjamin Woodall
Assistant

BW:db

